GEORGE HENRY DRAKE v. STEPHEN J. CLOONAN, MARY
J. CLOONAN, ROBERT LEBARON, AND
JUNIUS TEN EYCK.

*Pledge—Assignment—Executors and administrators.*

1. An administrator may lawfully sell at private sale, and assign
   to the purchaser, his interest in a mortgage and the accom-
   panying notes held by the decedent as pledgee at the time of
   his death, without first demanding payment of the pledgor,
   whose rights are not affected by such transfer.
2. A pledgee of personal property or securities cannot, to the injury
   of his pledgor, transfer the pledged property, or divest the
   pledgor of title thereto, until he has demanded payment of
   the debt, and given the pledgor an opportunity to redeem, and
   then only at public sale and on notice.

Appeal from Oakland. (Moore, J.) Argued January 5,
1894. Decided February 20, 1894.

Bill to foreclose a mortgage. Complainant appeals.
Decree reversed, and one entered in this Court for the
foreclosure of the mortgage. The facts are stated in the
opinion.

*Aaron Perry,* for complainant.

*J. Ten Eyck,* for defendants Stephen J. Cloonan and
Junius Ten Eyck.

MONTGOMERY, J. On the 1st day of April, 1880, Junius
Ten Eyck was the owner of five promissory notes made by
defendant Stephen J. Cloonan, payable to Ten Eyck or
bearer, aggregating $700, and secured by mortgage on real
estate. On that date he borrowed of Pomeroy Stiles $500,
and gave his note, due on or before one year after date,

for that amount, and delivered said notes and mortgage to Stiles, with the following memorandum:

"The mortgage hereto annexed, executed by Stephen J. Cloonan, is left with the within-named P. Stiles as security for this note, and, when this note is paid, the said mortgage and notes to be redelivered to me.

"Dated April 1, 1880.        J. TEN EYCK."

The note given by Ten Eyck, the five Cloonan notes, the mortgage, and the above memorandum were then attached together, and delivered to Stiles. On the 31st day of July, 1883, Pomeroy Stiles died testate; and George P. Stiles was appointed administrator of his estate, with the will annexed, and these securities were by him transferred to one Le Baron, who transferred them to one Owen to be collected, who in turn, by direction of Le Baron, transferred them to complainant with similar instructions. This bill is filed, making Ten Eyck and Cloonan parties, asking that the complainant be declared to have a lien upon the notes and mortgage to the amount of the Ten Eyck note, and that, unless redeemed, a sale be had to satisfy the demand. The circuit judge dismissed the bill, and complainant appeals.

We are not apprised of the grounds upon which the circuit judge proceeded. The defense insisted on in this Court is that the transaction between Ten Eyck and Pomeroy Stiles amounted to a personal pledge, and that when the representative of the pledgee transferred the securities without having demanded payment of Ten Eyck, and at a private sale without notice, he forfeited his right to the pledge, and passed no title to Le Baron which he could convey to complainant. We cannot perceive the force of this contention. It is undoubtedly quite correct to say that a pledgee of personal property or securities cannot, to the injury of his pledgor, transfer property or securities pledged, or divest the pledgor of title to them, until he

has demanded payment, and given the pledgor opportunity to redeem, and then only at public sale and on notice. But the cases in which this question has arisen have naturally been cases in which an attempt has been made so to divest the owner of his property. Such was not the case here, as we understand the record. The attempt on the part of the pledgee's administrator was simply to transfer to Le Baron the interest which he, as administrator, held in the securities pledged. This was no fraud upon the pledgor, and no wrong to him. He occupied precisely the same position as before, and could redeem the pledge on the same terms. He was only concerned in having an opportunity to get back· his securities on paying his note. This he has not been prevented from doing. In Jones on Pledges (section 418) it is said:

"The pledgee may assign his interest in the pledge, and the assignee will stand in his place. The lien of a pledge cannot be separated either from the possession of the pledge or from the debt, so that, to make an effectual sale, both must pass to the assignee. Therefore, if the pledge alone be assigned, unless it be negotiable paper or a chose in action having the legal qualities of such paper, payment or tender may be made to the original pledgee, who retains the debt, and then the assignee of the pledge is liable in trover for the pledge. As the security, however,· is a mere incident of the principal debt, just as a mortgage is a mere incident of the debt secured, an assignment of the debt passes either a legal or equitable interest in the pledge, unless it is otherwise agreed between the parties."

The doctrine of the· text is abundantly supported by authority; and it is held, also, that the original contract of pledge is not put an end to by repledging the thing pledged, and that the original pledgor cannot recover it without having first tendered or paid the amount of his debt secured by the pledge. See Jones, Pledges, § 420.

It is also argued that the assignment by the administrator

of the notes and mortgage in question was for the payment of his own debt; but an examination of the testimony does not support this contention.    On the contrary, it appears that there was a sale of the securities for cash to Le Baron.    As to the right of the administrator to transfer pledged securities, see Id. § 482.

The decree below will be reversed, and a decree entered in this Court for a foreclosure of the mortgage.    Any surplus that may be realized, over and above sufficient to pay off the indebtedness owing by Ten Eyck on the note executed by him, will be payable to the defendant Ten Eyck. The complainant will recover costs of both courts.

McGRATH, C. J., GRANT and HOOKER, JJ., concurred. LONG, J., did not sit.